UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH PAUL FITCH                                               CIVIL ACTION

VERSUS                                                          NO. 06-3940

TERREBONNE PARISH                                               SECTION: "A"(3)
CONSOLIDATED GOVERNMENT

## ORDER AND REASONS

Plaintiff, Joseph Paul Fitch, a state prisoner, filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the Terrebonne Parish Consolidated Government. In this lawsuit, plaintiff complains that he was provided with inadequate medical care for back and elbow pain. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

Defendant has filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[2] Plaintiff was ordered to file a memorandum in opposition to that motion,[3] but he has not done so.[4]

---

[1] Rec. Doc. 13.

[2] Rec. Doc. 11.

[3] Rec. Doc. 12.

[4] On the contrary, plaintiff has indicated that he in fact wishes to dismiss this lawsuit. Rec. Doc. 14. However, because defendant has filed an answer and a motion for summary judgment, and because the parties have not filed a stipulation of dismissal, plaintiff is not entitled to a voluntary dismissal without prejudice. Fed.R.Civ.P. 41(a).

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to

articulate the precise manner in which the evidence supports his or her claim." Id.  Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment.  Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).  "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

In his complaint, plaintiff stated his claim as follows:

> On 9·24·05 I was injured during transport for the hurricane.  My injuries are constant back pain and a disfigured elbow.  The elbow feels like it has a chiped bone.  I have put several request in to see the doctor for my injuries.  T.P.C.J.C. medical nurse just gives me ibuprofin and flexoril.  They stopped the medication after about 3 months.  It has been 10 months now since my accident and I still havent seen a real doctor.  They just bring me to the nurse and give me ibuprofin and send me back to my cell.[5]

The sole defendant in this action, the Terrebonne Parish Consolidated Government, concedes that it administers the medical department at the Terrebonne Parish Criminal Justice Complex.[6] However, defendant contends that plaintiff has failed to state a cognizable claim.  Defendant is correct.

Pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and its progeny, the United States Fifth Circuit Court of Appeals has held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially

---

[5] Rec. Doc. 1.

[6] Rec. Doc. 11, Statement of Undisputed Facts, p. 1.

> allege that an official policy or custom was a cause in fact for the deprivation of the rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of the official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Because plaintiff has not alleged that his purportedly inadequate medical care resulted from a policy or custom of the Terrebonne Parish Consolidated Government, he has stated no cognizable claim against the defendant.

Moreover, defendant alternatively contends that, in any event, plaintiff's underlying claim that his medical care was unconstitutional has no merit. That contention is also correct.

It is true that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) (pretrial detainee); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999) (convicted prisoner). However, the United States Fifth Circuit Court of Appeals has held:

> Deliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks and citations omitted). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." Thompson,

4

245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, plaintiff complains of the delay in having him examined and treated by a "real doctor."  However, mere delay in receiving medical care is insufficient to create § 1983 liability unless harm resulted.  Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).  Even if there had been a substantial delay as plaintiff alleges, he has not established that harm resulted.  See, e.g., Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) ("[C]ontinuing back pain is unpleasant.  Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred.")  Moreover, in any event, plaintiff's unrebutted medical records, which were submitted with defendant's motion, disprove that there was any such delay.  Those records reflect that plaintiff was initially seen for his purported injuries by a physician at the Washington Correctional Institute on September 29, 2005, a mere five days after his fall.  Moreover, over the next several months, he submitted to the jail medical department numerous complaints, all of which were reviewed and answered by members of the medical staff, including "real doctors."  The medical records further reflect that, in addition to receiving pain medication, he was x-rayed on three occasions for his purported injuries.  His back was x-rayed on October 19, 2005, and the results were normal.  Likewise, on November 17, 2005, his elbow was x-rayed and also found to be normal; additionally, the elbow was x-rayed yet again on December 13, 2005.  As late as July 9, 2006, it was ordered that he could have over-the-counter pain medication for his back and elbow as needed.

It is obvious from plaintiff's complaint that he was frustrated from what he perceived to be a lack of quality medical care at the Terrebonne Parish Criminal Justice Complex.  However, a

5

disagreement between an inmate and the medical staff concerning whether certain medical treatment was appropriate generally is not actionable absent exceptional circumstances. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). Additionally, the mere fact that a prisoner's medical treatment was ultimately unsuccessful does not give rise to a § 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Moreover, to the extent that plaintiff is arguing that he was not given the best medical care available, that simply is not the constitutional standard. See Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992) (the fact that medical treatment "may not have been the best money could buy" was insufficient to establish a constitutional violation); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978) (the applicable legal standard is not whether an inmate was provided the "optimum" or "best" medical care available). Rather, as noted, the applicable test is whether prison officials were *deliberately indifferent* to plaintiff's serious medical needs. Plaintiff's unrebutted medical records clearly establish that there was no deliberate indifference in this case. See Banuelos, 41 F.3d at 235 ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

Plaintiff's allegations are, at best, ones of medical malpractice or negligence. However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 107 (1976). "It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action." Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993). Simply put, allegations of malpractice or negligence alone are never sufficient to state a claim for unconstitutional medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment is **GRANTED** and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this twenty-fifth day of January, 2007.

**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**